1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM COX, individually, by and through his durable power of attorney, VICTOR COX, and on behalf of himself and others similarly situated; MARIA OVERTON, individually, and on behalf of herself and others similarly situated; JORDAN YATES, individually, and on behalf of himself and others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>AMETEK, INC., a Delaware corporation; THOMAS DEENEY, individually; SENIOR OPERATIONS LLC, a limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.:  3:17-cv-00597-GPC-AGS<br><br>**FINAL JUDGMENT AND ORDER GRANTING:**<br><br>**1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT, [Dkt. 129];**<br><br>**2) MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARDS [Dkt. 128]; and**<br><br>**3) JOINT MOTION FOR CONSENT TO EXERCISE JURISDICTION BY A UNITED STATES MAGISTRATE JUDGE [Dkt. 148]** |

Plaintiffs Maria Overton owns and lives in a mobile home unit at Greenfield Mobile Estates in El Cajon, California. Plaintiff Jordan Yates (together with Overton, the "Class Representatives") is a former resident of a mobile home unit in the nearby Villa Cajon Mobile Home Estate. Those two mobile home parks and Starlight Mobile Home Park (collectively, the "Mobile Home Parks") are adjacent to a manufacturing facility formerly owned by Ametek, Inc. and later owned by Senior

Operations, LLC. Overton, Yates, and Adam Cox (collectively, "Plaintiffs"), filed an Amended Complaint in this action against Ametek, former Ametek officer Thomas Deeney, and Senior Operations.[1] Plaintiffs allege that Defendants contaminated the groundwater with waste chemicals and then failed to remediate the resulting plume of polluted water, exposing units and residents in the Mobile Home Parks to unsafe indoor air concentrations of trichloroethylene ("TCE"). The Amended Complaint asserts causes of action for negligence, gross negligence, and public nuisance on behalf of a putative class of current owners and current and former residents of units in the Mobile Home Parks.

The Parties entered into a Settlement Agreement that, following one amendment and one modification, would resolve the action and settle the putative class's claims if the Court certifies the class and approves the Settlement. On April 14, 2020, the Court entered its Preliminary Approval Order approving the Settlement, certifying the Class, appointing Class representatives and Class Counsel, and scheduling a final approval hearing. Dkt. 127. The Court conducted two hearings to determine whether the Settlement is fair, reasonable, adequate, in the best interests of the Class, and free from collusion, such that the Court should grant Final Approval of the Settlement, and to consider Plaintiffs' motion for an award of attorneys' fees, costs and litigation expenses, and incentives for the Class Representatives ("Fairness Hearing").

The Court has considered:

- Plaintiffs' briefing in support of the Motion for an Order Granting Final Approval of the Class Action Settlement (the "Final Approval Motion");
- Plaintiffs' briefing in support of the Motion for Attorneys' Fees, Costs, and Incentive Awards (the "Fee Motion");

---

[1] The initial Complaint was filed by Cox only. Cox died during the pendency of this action. Counsel doesn't ask to appoint Cox as a class representative.

- Plaintiffs' Supplemental Briefing in support of the Final Approval Motion;
- The declarations and exhibits submitted in support of each Motion and the Settlement;
- The Settlement Agreement;
- The First Amended Settlement Agreement;
- The First Modification to the First Amended Settlement Agreement (together with the First Amended Settlement Agreement, the "Amended Settlement Agreement");
- The entire record in this proceeding, including but not limited to the briefing, declarations, and exhibits submitted in support of preliminary approval of the Settlement in its various iterations, including;
    o The Notice Plan for providing full and fair notice to the Class;
    o The lack of any Class Member objections to or requests for exclusion from the Settlement;
    o The absence of any objection or response by any official after the provision of all notices required by the Class Action Fairness Act of 2005, 28 U.S.C. § 1715; and
    o Counsel's oral presentations at the two hearings on the Settlement's fairness;
- This Court's experiences, observations, and file developed in presiding over resolution of this matter; and
- The relevant law.

Based upon these considerations and the Court's findings of fact and conclusions of law as set forth in the Preliminary Approval Order and below, **IT IS ORDERED**:

1) Final Approval of the Settlement is **GRANTED**;

2) The Settlement Class is **CERTIFIED**;

3) Maria Overton and Jordan Yates are appointed as Class Representatives and the incentive awards requested in the Fee Motion are **APPROVED**;

4) Epiq Class Action & Claims Solutions, Inc. is appointed as Claims Administrator and the payments to the Claims Administrator requested in the Fee Motion are **APPROVED**;

5) The Law Offices of Baron & Budd are appointed as Class Counsel and the attorneys' fees requested in the Fee Motion are **APPROVED**;

6) The Joint Motion for Consent to Exercise Jurisdiction by a United States Magistrate Judge, Dkt. 148, is **GRANTED**; and

7) Plaintiffs' claims are **DISMISSED WITH PREJUDICE** in accordance with the terms of this Order.

## DISCUSSION

### I.   Incorporation of Documents

This Final Approval Order incorporates the Amended Settlement Agreement, including each of its exhibits.

### II.   Definitions

Any capitalized terms used but not defined in this Order shall have the meanings given to them in the Amended Settlement Agreement.

### III.   Jurisdiction

The Court has subject matter jurisdiction over this action, including jurisdiction over all claims alleged in the action, settlement of those claims on a class-wide basis, and all claims released by the Settlement, and any objections submitted to the Settlement.

The Court also has personal jurisdiction over the Parties. As discussed in greater detail below and in the Court's Preliminary Approval Order, the Class Members received adequate notice, had the right to opt out, and were adequately represented by Yates and Overton. Accordingly, the Court can and does exercise jurisdiction over those Class Members' claims. *See Phillips Petroleum Co. v.*

*Shutts*, 472 U.S. 797, 811-12 (1986) (adequate notice and opportunity to be heard permits courts to exercise jurisdiction over claims of absent class members).

## IV. Findings and Conclusions

### A. Definition of Class and Class Members

The Court adopts the Preliminary Approval Order's definition of the "Class," comprised of the "Class Members," and reproduces the class definition below:

> Medical Consultation Program Subclass:
>
> Every person who resided in the following mobile home parks for one or more calendar year between January 1, 1963, and April 13, 2020: 1) Greenfield Mobile Estates, 400 Greenfield Drive, El Cajon, California 92021; 2) Starlight Mobile Home Park 351 E. Bradley Avenue, El Cajon, California 92021; 3) Villa Cajon Mobile Home Estates, 255 E. Bradley Ave., El Cajon, California 92021.
>
> Mobile Home Coach Mitigation System Subclass:
>
> Every person who as of April 13, 2020, owns the mobile home coach at the following locations: 1) Greenfield Mobile Estates, 400 Greenfield Drive, El Cajon, California 92021; Starlight Mobile Home Park, 351 E. Bradley Avenue, El Cajon, California 92021; Villa Cajon Mobile Home Estates, 255 E. Bradley Ave., El Cajon, California 92021.

### B. Class Certification

The Court grants final certification of the Class. All Class Members are subject to this Order and the Final Judgment.

#### 1. Numerosity

The proposed Settlement consists of potentially thousands of claimants, which can reasonably be inferred from the number of mobile home coaches within

the three Mobile Home Parks, the average household size, the average length of residence in a mobile home coach, and the nearly six-decade class period. For the purposes of this Settlement, no party or objector contests numerosity. The Court finds that the Class is sufficiently numerous that joinder of all class claims is impracticable. Fed. R. Civ. P. 23(a)(1).

### 2. Commonality

There are questions of law and fact common to the Class, including whether Defendants caused TCE contamination in groundwater, whether the TCE contamination made its way to indoor air within the downgradient homes, and whether and to what extent Class Members were exposed to the indoor air TCE contamination. All Class Members allegedly suffered the same injury: exposure to indoor air TCE contamination resulting in increased risk of disease or illness. All Class Members were exposed to the same or substantially similar indoor air contamination, and all allegedly suffered increased risk of disease or illness from that exposure. Resolution of the common questions about Defendants' conduct and its effects on Class Members' health would resolve all the claims in one stroke. The Court affirms its prior determination that the Class satisfies the commonality requirement.

### 3. Typicality

The Class Representatives' claims are reasonably co-extensive with those of the other Class Members and meet Rule 23(a)(3)'s requirements. Typicality is a "permissive" standard under which "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Overton and Yates each resided in one of the Mobile Home Parks at issue for at least a year during the Class period and alleges that he or she has suffered increased risk from the same or substantially similar indoor air

contamination as the other members of the Medical Consultation Program Subclass. Overton also owns a unit in one of the Mobile Home Parks and alleges that she has suffered the same or substantially similar contamination of her property as other members of the Mobile Home Coach Mitigation Subclass. The Class Representatives do not allege that their increased risk has matured into illness traceable to the contamination, and the Settlement does not release any such claims for illness or death.[2] No Party or Class Member contests typicality for the purposes of the Settlement. The Court finds that the Class Representatives' claims are reasonably co-extensive with those of the other Class and Subclass Members.

### 4.    Adequacy of Class Representatives

Having considered the factors set forth in Rule 23(g)(1), the Court finds that the Class Representatives and Class Counsel are adequate to represent the Class. For the purposes of this Settlement, no Party or objector contends that the Class lacks adequate representation. Class Counsel has fully and competently prosecuted all causes of action, claims, theories of liability, and remedies reasonably available to the Class Members. The Court affirms its appointment of the Law Offices of Baron & Budd as Class Counsel. The Court also affirms its appointment of Maria Overton and Jordan Yates as Class Representatives, finding that they possess no interests adverse to the Class and are adequate to represent the Class.

### 5.    The Class Meets the Requirements of Rule 23(b)(3)

For the purposes of this Settlement, the Parties contend that the elements of Rules 23(b)(3) have been met. The Court finds that questions of law or fact common

---

[2] Cox died of cancer during while this action was pending. The Court did not preliminarily approve Cox as a Class representative nor does it so appoint him by this Order. Class Counsel, who represents Cox in both this action and in his related individual action, affirmed that Cox does not allege here that his cancer resulted from the contamination at issue. Dkt. 136 at 16:3-20. Moreover, the claims released by the Settlement are limited to claims for the typical injury of increased risk.

to Class Members predominate over any questions affecting only individual members and that class treatment is the superior means to adjudicate Plaintiffs' claims. Plaintiffs allege a common injury on behalf of the Class, specifically that Defendants' acts or omissions created a condition of contamination that resulted in Class Members' general exposure to indoor air concentrations of TCE and an increased risk of the onset of disease or illness. The Court also finds that resolution on a class-wide basis is superior for purposes of judicial efficiency and to provide a forum for absent Class Members, who are unlikely to bring individual suits to seek the relief provided here. The Court affirms its prior ruling that the Class satisfies Rule 23(b)(3).

## V.   The Settlement

"Because of the unique due process concerns relating to absent class members and the inherent risk of collusion between class counsel and defense counsel, Federal Rule of Civil Procedure 23(e) requires district courts to review proposed class action settlements for fairness, reasonableness, and adequacy." *Roes, 1-2 v. SFBSC Management, LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019). Where the settlement comes prior to class certification, "settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Id.* at 1048-49 (internal marks and citation omitted). The Court must look particularly for evidence of collusion or other conflicts of interest to protect absent class members. *Id.*

Applying this standard, the Court finds that the Settlement is fair, reasonable, and adequate to the Class, in light of the complexity, expense, and likely duration of the litigation (including appellate proceedings), as well as the risks involved in establishing liability, damages, and the appropriateness of class treatment through trial and appeal. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009). The Settlement appears to be the result of arm's-length negotiation and the record doesn't support a conclusion that the Settlement is the result of

either collusion among Plaintiffs, Class Counsel, and Defendants or conflicts of interest between Plaintiffs and Class Counsel, on the one hand, and the Class Members, on the other.

### A.   Generally

The Parties reached the proposed Settlement only after proceeding with voluntary investigation and discovery in this action and following protracted negotiations with oversight from Magistrate Judge Andrew G. Schopler and the undersigned District Judge. Following resolution in principle, the Parties engaged in extensive negotiations related to the specific terms of the original Settlement Agreement, the Amended Settlement Agreement, the Preliminary Approval Motion, and the notices to Class Members (the "Settlement Notices") in order to reach final agreement on the specific terms of the proposed Settlement.

Plaintiffs and Class Counsel maintain that this action and the claims asserted in it are meritorious and that Plaintiffs and the Class might have prevailed at trial. Nevertheless, Plaintiffs and Class Counsel have agreed to settle the action pursuant to the provisions of the Settlement, after considering, among other things: (1) the benefits to Plaintiffs and the Class under the terms of the Settlement; (2) the uncertainty of prevailing at trial; (3) the uncertainty of maintaining a class through or after trial; (4) the attendant risks, difficulties, and delays inherent in litigation, appeals and post-trial motions, especially in complex actions such as this; and (5) the desirability of consummating this Settlement promptly in order to provide substantive relief to Plaintiffs and the Class without unnecessary delay and expense.

Plaintiffs and Class Counsel agree that the Settlement is fair, reasonable, and adequate because it provides substantial benefits to the Class, is in the best interests of the Class, and fairly resolves the claims alleged in this action. The Court has received no objections to the Settlement.

/ / /

Defendants expressly deny any wrongdoing alleged in the pleadings in the action and do not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims which have been or could have been alleged against it in the action. Defendants nonetheless want to settle the action because the proposed Settlement will: (1) avoid further expense and disruption of the management and operation of Defendants' businesses due to the pendency and defense of the action; (2) finally put Plaintiffs' and the Class' claims and the underlying matters to rest; and (3) avoid the substantial expense, burdens, and uncertainties associated with a potential finding of liability and damages on the claims alleged in the Complaint.

The Parties engaged in thorough formal and informal discovery addressing, among other things, claims and defenses on the issues of: (1) Defendants' responsibility for the contamination at the former Ametek facility; (2) whether the contamination at the facility resulted in contamination of groundwater; (3) the natural fate and transport of contaminated groundwater and whether it resulted in contamination underneath the Mobile Home Parks; (4) whether the contamination of the groundwater at the Mobile Home Parks resulted in TCE being present in soil vapor under the residences at the Mobile Home Parks; (4) whether the TCE in the soil vapor under the Mobile Home Parks eventually made its way into indoor air in the mobile home coaches owned and/or occupied by Plaintiffs and Class Members; (5) whether and to what extent the Class Members who lived in the mobile home coaches were exposed to TCE in indoor air; (6) whether the level of exposure presented a significant health risk to Class Members; (7) whether Class Members suffered an actual increased risk of the onset of specific diseases associated with TCE exposure at the levels purportedly observed and modeled within the mobile home coaches; and (8) whether early clinical detection through medical consultation was reasonable and appropriate. As a result of this investigation, the

/ / /

Parties were well-versed in the merits of their claims and defenses, the risks of continued litigation, and the likelihood of success at trial.

Thorough discovery and representation by attorneys with extensive experience in toxic tort and complex class action litigation informed Plaintiffs and Defendants of the legal bases for the claims and defenses in this litigation and enabled them to balance the benefits of the Settlement relative to further litigation.

## B. The Settlement Affords Meaningful Relief in Exchange for the Release of Class Members' Claims

The Amended Settlement Agreement provides relief that is meaningful and commensurate to the claims released by that Agreement. Through the Settlement, Class Members release claims arising from this action, including claims for attorneys' fees and expenses, costs or disbursements incurred by Class Counsel, and claims that were or could have been set forth as part of the action based on the facts alleged. It includes a waiver of all rights under Section 1542 of the California Civil Code, except to the extent otherwise specified in the Amended Settlement Agreement. However, Class Members do not release personal injury and wrongful death claims arising out of illness traceable to the plume, any claims arising from the mitigation systems installed pursuant to the Settlement, and any claims arising from Defendants' future actions taken to mitigate or remediate the plume (whether at a regulator's insistence or of Defendants' own accord).

In exchange for this release, Defendants confer a benefit of $3.5 million on the roughly 7,000-person class, in the form of medical consultations and remediation and mitigation of the plume. Of that amount, $1.5 million will be paid into a Medical Consultation Fund. Each member of the Medical Consultation Subclass is entitled to one (1) medical consultation with a doctor selected by Class Counsel to receive any or all of the following procedures, according to the advice of a physician selected at the Subclass Member's discretion:

/ / /

- history and physical examination by board-certified physician;

- blood chemistry, blood count and microscopy urinalysis;

- kidney CT scan (in a follow-up appointment, if deemed necessary); and

- liver ultrasound or MRI (in a follow-up appointment, if deemed necessary).

These procedures are intended to screen for medical conditions including those potentially associated with exposure to high concentrations of TCE, including kidney cancer, liver cancer, and hematolymphatic cancer. All Medical Subclass Members who submit a claim within two years of this Order will be entitled to these services, which will be billed directly to the Claims Administrator and paid in full out of the Medical Consultation fund until four years and six months after the date of this Order or that fund is exhausted. Any amounts remaining in the Medical Consultation fund after four years and six months pass into the Remediation/Mitigation Fund described below.

Ametek will also pay $1 million into a fund (the "Remediation/Mitigation Fund") dedicated to monitoring, remediation, and mitigation activities related to the plume, including sampling and mitigation in the homes of members of the Sampling/Mitigation Program Subclass. Those Subclass Members are each entitled to receive two indoor air samples per year for two years, to be conducted in a manner consistent with and according to sampling protocols approved by the California Department of Toxic Substances Control ("DTSC"). The results of that sampling and any necessary confirmation sampling will be shared with DTSC (or other appropriate regulatory or governmental agency) for review and to assess both: 1) whether further sampling is needed; and 2) whether the installation of mitigation measures is appropriate and warranted. Where the regulator determines that installation of mitigation measures is necessary and appropriate, the affected Subclass Member will be entitled to installation of a mitigation system consisting of passive venting of the crawlspace beneath their mobile home coach. Sampling/Mitigation Program Subclass benefits claimed within a year of this Order

will be billed directly to the Claims Administrator and paid in full out of the Remediation/Mitigation fund until twenty years after the date of this Order or that fund is exhausted.

Beyond the sampling and mitigation described above, the Remediation/Mitigation fund is available only for monitoring, remediation, and mitigation activities related to the plume originating from the Former Ametek Facility, in accordance with and pursuant to directed or agreed response actions from the Regional Water Quality Control Board, the Department of Toxic Substance Control, and/or any other regulatory or governmental agency responsible for oversight of the plume. Any amounts remaining in the Remediation/Mitigation fund after 20 years will be paid to the Cajon Valley Union School District.

In total, the benefit to the class, including both the Remediation/Mitigation Fund and the Medical Consultation Fund, but subtracting the fees, costs, and incentives the Court awards by this Order, comes to around $300 per member of the roughly 7,000-member class. The Court has considered the realistic range of outcomes in this matter, including the amount Plaintiffs might receive if they prevailed at trial, the risk that Plaintiffs' recovery at trial could be less than the amount of the Settlement or nothing at all, the strength and weaknesses of the case, the novelty and number of the complex legal issues involved, and the scope of the claims that Class Members release by the Settlement. The magnitude of the alleged harm in this case, in particular, supports a finding that the Settlement provides a meaningful and reasonable benefit to the Class. Plaintiffs allege that the highest-measured level of TCE contamination on another property adjacent to the manufacturing facility was associated with an additional lifetime cancer risk of 42 in a million, or 0.0042%. Am. Compl., Dkt. 5, ¶¶ 67-79. Any damages that might be recovered at trial for a harm in that range would doubtfully exceed the benefit provided by the Settlement by much, if at all.

/ / /

The Court has also considered the risk that, in the absence of Settlement funds set aside for abatement, Defendants may not devote funds to that purpose. *See, e.g., id.*, ¶ 44 (alleging Defendants' resistance to remediation and citing Administrative Liability Complaint alleging Ametek's failure to comply with prior abatement order); Dkt. 143 at 12:6-14:15 (discussing Class Counsel's view of benefits of remediation to Class Members). Finally, the Court has reviewed and considered the agreements made in connection with the Settlement and disclosed to the Court pursuant to Rules 23(e)(3) and (e)(2)(c)(iv), finding nothing in those agreements to suggest that the Settlement doesn't provide adequate relief.

The relief offered by the Settlement is fair, reasonable, and adequate in view of each of these considerations.

## C.    No Collusion or Conflicts of Interest

The Court hasn't found evidence to support a conclusion that Plaintiffs and Defendants colluded. Up to and through the Settlement, both Parties vigorously litigated and negotiated this action, as evidenced by the docket in this action and the Court's understanding of the proceedings in the related actions.

However, the Amended Settlement Agreement's "clear sailing" provision, under which Defendants agreed not to contest any request for fees exceeding 25% of the Settlement funds, is a "subtle sign of collusion." *SFBSC Management*, 944 F.3d at 1049. The presence of such a provision requires the Court to look closely at the reasonableness of the recovery and the reasonableness of fees to confirm that Class Counsel haven't negotiated a benefit for themselves using the Class's claims as leverage. *Id.*

That scrutiny doesn't reveal evidence that Class Counsel bargained away a Class benefit in exchange for clear sailing on an unreasonably large fee award. The Settlement's benefit to the Class is appropriate in relation to the likelihood of success at trial and the magnitude of the Class claims. The alleged harm to Class Members, in the form of marginally increased risk of illness or disease, renders the

Settlement's benefit favorable even after subtracting fees, costs, and incentive awards. Moreover, the minute marginal risk alleged to each individual Class Member supports the conclusion that devoting the vast majority of the net recovery to remediation rather than medical screening, as the Settlement does, is reasonable and ensures efficient use of the Settlement funds to redress the Class's shared injury. Finally, the Amended Settlement Agreement conditions payment on execution of settlement agreements in three related matters between Defendants and, respectively, another class, the Mobile Home Parks, and Cox. The Court has reviewed those settlements and finds that their terms don't unreasonably favor the other class, the Mobile Home Parks, or Cox in light of the claims remaining in those cases at the time of settlement, remedies sought, and the amount of the settlement in this case. Nor do any other provisions of those settlements suggest that the Class's recovery was reduced to enhance the other plaintiffs' recovery.

Class Counsel's requested fees withstand close scrutiny, too. They seek 20% of the total—less than the 25% benchmark, less than the maximum the clear sailing agreement allows without objection, and a bit lower even than Class Counsel's lodestar. As discussed in greater detail *infra*, Section XII, these fees are reasonable. The Court finds it unlikely that the clear sailing agreement provided a non-negligible benefit to Class Counsel under these circumstances, making it unlikely, too, that the Class's interests were sacrificed in securing the clear sailing provision. Because both the Class benefit and the requested fees withstand close scrutiny, the Court finds no apparent collusion.

### D.    Response of Class

The response of the Class after full, fair, and effective notice favors final approval of the Settlement. Out of the estimated thousands who received notice, no Class Member submitted a valid request for exclusion or filed an objection to the Settlement.

/ / /

## VI.  Notice to Class

The Class has received the best practicable notice under the circumstances of this case. The Parties' selection and retention of Epiq Class Action & Claims Solutions, Inc. ("Epiq") as the Claims Administrator was reasonable and appropriate. Based on the Declaration of Cameron Azari of Epiq, the Court finds that the Settlement Notices were published to the Class Members in the form and manner approved by the Court in its Preliminary Approval Order. *See* Dkt. 129-6. The Settlement Notices provided fair, effective, and the best practicable notice to the Class of the Settlement's terms. The Settlement Notices informed the Class of Plaintiffs' intent to seek attorneys' fees, costs, and incentive payments, set forth the date, time, and place of the Fairness Hearing, and explained Class Members' rights to object to the Settlement or Fee Motion and to appear at the Fairness Hearing. The Settlement and the Court's deadlines afforded Class Members reasonable time to exercise such rights. *See Weeks v. Kellogg Co.*, 2013 WL  6531177, at *22-23 (C.D. Cal. Nov. 23, 2013) (class members' deadline to object or opt out must arise after class counsel's fee motion is filed), *citing In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988, 994 (9th Cir. 2010). The Settlement Notices fully satisfied all notice requirements under the law, including the Federal Rules of Civil Procedure, the requirements of the California Legal Remedies Act, Cal. Civ. Code § 1781, and all due process rights under the U.S. Constitution and California Constitutions.

## VII.  Notices Pursuant to 28 U.S.C. § 1715.

The Court finds that Defendants satisfied all notice requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. *See* Hyte Decl., Dkt. 129-5. On April 7, 2020, at Defendants' direction, Epiq subsidiary SSI Settlement Services served the notices required by 28 U.S.C. § 1715(b), which included a copy of the Settlement Agreement and other required documents, as well as notice of the date, time, and place of the Fairness Hearing. The Court has received no

objection or response to the Settlement Agreement by any federal or state official, including any recipient of the foregoing notices.

## VIII. Incorporation of Release

The Release set forth in the Amended Settlement Agreement is incorporated in this Order in all respects. That Release is effective as of the date of the entry of this Order.

## IX. Binding Effect

Any Class Member who failed timely and validly to object to or opt out of the Settlement has waived the right to object or opt out. *See* Dkt. 127 at 5. Any Class Member seeking to challenge the Court's rulings or opt out must: (a) move to intervene upon a showing of good cause sufficient to overcome the presumption that absent Class Members are bound by the deadline to object or opt-out and the subsequent judgment; (b) request a stay of implementation of the Settlement; and (c) post an appropriate bond. *See, generally, Silber v. Mabon*, 18 F.3d 1449, 1454-1455 (discussing factors influencing trial court's discretion in addressing untimely requests to opt-out of class). Absent satisfaction of all three requirements, Defendant is authorized, at its sole option and in its sole discretion, to proceed with the implementation of the Settlement, including before the Effective Date, even if such implementation would moot any appeal.

## X. Implementation of Settlement

The Parties are directed to implement the Amended Settlement Agreement according to its terms.

## XI. Objections and Opt-Outs after Implementation

Any Class Member who failed to file a timely and valid objection to or opt out of the Settlement has waived the right to object or opt out. Any Class Member seeking to challenge the Court's rulings or opt out must: (a) move to intervene upon a showing of good cause sufficient to overcome the presumption that absent Class Members are bound by the judgment and the deadline to object or opt-out;

(b) request a stay of implementation of the Settlement; and (c) post an appropriate bond. *See generally Silber v. Mabon*, 18 F.3d 1449, 1454-1455 (9th Cir. 1994) (discussing factors influencing trial court's discretion in addressing untimely requests to opt-out of class). Absent satisfaction of all three requirements, Defendants are authorized, at its sole option and in its sole discretion, to proceed with the implementation of the Settlement, including before the Effective Date, even if such implementation would moot any appeal.

## XII.  Attorneys' Fees and Litigation Expenses

Class Counsel is entitled to reasonable attorneys' fees incurred in connection with the action and in reaching this Settlement in the amount of $700,000.00, to be paid at the time and in the manner provided in the Amended Settlement Agreement. Fee awards must "be reasonable under the circumstances," and where the award comes out of a common fund, "courts have discretion to employ either the lodestar method or the percentage-of-the-fund approach." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The latter approach is appropriate in a common-fund case "[b]ecause the benefit to the class [in such a case] is easily quantified." *Id.*

"[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Id.* The benchmark on its own doesn't establish reasonableness conclusively, but it's a "helpful starting point" that can be supplemented with consideration of factors including "the extent to which class counsel achieved exceptional results for the class, whether the case was risky for class counsel, whether counsel's performance generated benefits beyond the cash settlement fund, the market rate for the particular field of law (in some circumstances), the burdens class counsel experienced while litigating the case (e.g., cost, duration, foregoing other work), . . . whether the case was handled on a contingency basis[, . . . and] class counsel's lodestar summary figures." *In re Online*

*DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015) (internal marks omitted).

The fee award sought in the present case is reasonable when judged by this standard. Class Counsel requests a $700,000 award, representing 20% of the $3.5 million directed to the class's benefit and substantially less than the $875,000 suggested by application of the 25% benchmark rate. Class Counsel took this case on contingency, risking non-payment for 975 hours of attorney time, 150 hours of paralegal time, and $552,511.92 in other costs during the three-year course of this litigation. That non-payment risk was substantial in this case. As discussed *supra*, Section V(B), the alleged increased risk of illness—the harm for which Plaintiffs sought recovery—is small, even in relation to the size of the Class. The likelihood that Class Counsel wouldn't be able to recover some or all of its fees was abnormally high as a result, even assuming away the difficulties of proving causation, which Defendants vigorously contested, the other elements of the Class's claims, and the appropriateness of the class form. *See, e.g., Trujillo v. Ametek*, Case No. 15-cv-1394, Dkt. 85-2 at 13-16 (Jan. 3, 2017) (Defendants' expert report in related litigation opining that plaintiffs' alleged increased risk from plume isn't "significant" against background lifetime cancer risks around 40%). The underlying risk that Plaintiffs wouldn't prevail confirms, too, that the benefits Class Counsel secured in the Settlement are a strong result.

Class Counsel's lodestar calculation of $711,250, while not the primary basis for or necessary to the Court's conclusion, confirms that a $700,000 award is reasonable. The multiplier—the ratio of the award to the result of the lodestar calculation—is less than one. Percentage-of-recovery awards with a multiplier less than one are the exception in common fund cases. Surveying percentage-based fee awards from 1996 to 2001 in such cases where the total award was between $50 million and $200 million, the Ninth Circuit found only one in twenty-four with a multiplier less than one. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 Appx. (9th Cir.

2002). The comparison isn't apples-to-apples, since this case is substantially smaller. That size difference, though, underscores the reasonableness of the multiplier here, because Courts generally award *larger* multipliers in smaller cases. *See, e.g., id.* at 1047-48 (noting that in large cases, courts must consider size of total fund before calculating fees as percentage of that amount); *In re Washington Public Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1297 (9th Cir. 1994) (observing that "the percentage of an award generally decreases as the amount of the fund increases").

Class Counsel's rates and fees used to arrive at the lodestar amount appear reasonable, too. They charged the following rates for attorneys and staff in this litigation:

- Scott Summy, an attorney with approximately 30 years' experience, $1,000.00 per hour;

- John Fiske, an attorney with approximately 14 years' experience, $750.00 per hour;

- Jason Julius, an attorney with approximately 13 years' experience, $550.00 per hour; and

- Jennifer Hutchison, a senior paralegal, $250 per hour.

*See* Dkt. 128-2 at 120, 128, 130 (stating law school graduation dates for each attorney). These rates are reasonable in this jurisdiction for similarly complex legal work. *Cf. McKibben v. McMahon*, Case No. EDCV 14-2171, 2019 WL 1109683 at *4-*5 (C.D. Cal. Feb. 28, 2019) (finding rates between $650 and $900 reasonable for experienced counsel in employment class action).

The time Class Counsel spent on this action is reasonable in view of the complexity and subject matter of this litigation, the skill and diligence with which it has been prosecuted and defended, and the quality of the result obtained for the Class. For this case's share of 31 fact witness depositions, 18 expert witness depositions, work with experts in anticipation of a class certification motion, written

discovery, and drafting of pleadings and briefing on discovery disputes, motions to dismiss, and other tasks described in the Fiske Declaration, Mr. Summy billed 150 hours, Mr. Fiske billed 350 hours, Mr. Julius billed 475 hours, and Ms. Hutchison billed 150 hours. These are reasonable sums for three years of active litigation of a complex matter.

Applying the benchmark method and taking into consideration the burden and risk to Class Counsel, the quality of the result, the contingency fee arrangement, and Class Counsel's lodestar summary, the Court finds a fee award of $700,000 reasonable and orders that Class Counsel be compensated in that amount in the manner specified in the Amended Settlement Agreement. No named Plaintiff or any other Class Member shall have any obligation to pay Class Counsel any further amounts for attorneys' fees, costs, or litigation expenses in this action. As no objection was filed, no Class Member is entitled to seek or receive any further payment of attorneys' fees or litigation expenses incurred in connection with this action.

Class Counsel had incurred, at the time of the Fee Motion, $552,611.92 in out-of-pocket litigation expenses in connection with this litigation. These expenses were of a nature typically billed to fee-paying clients and were reasonable and necessary to the prosecution of this action in light of the extent of proceedings both on and off the Court's docket, the complexity of the legal and factual issues in the case, the necessity of extensive expert and fact discovery, the amount at stake in this litigation, and the vigorous efforts of counsel for all Parties. Accordingly, the Court awards these expenses to Class Counsel, paid in accordance with the terms of the Amended Settlement Agreement.

Epiq, as Claims Administrator, estimates total administration costs of $179,283. This amount is reasonable in light of the total settlement funds and the size of the class. Epiq's can reasonably be expected to continue to expend costs that are necessary and appropriate for the administration of the Class claims. Those

costs are recoverable pursuant to the terms of the Amended Settlement Agreement. The Court orders that Epiq shall be paid in the time and manner provided in the Amended Settlement Agreement, according to Epiq's invoices in an amount up to $185,000. Any costs beyond that amount may be permitted pursuant to further Court order.

## XIII.  Class Representative Incentive

Maria Overton and Jordan Yates, whom the Court preliminarily appointed Class Representatives in its Preliminary Approval Order, have actively participated in and assisted Class Counsel with this litigation for the substantial benefit of the Class. Overton and Yates waived their right to pursue potential individual relief. Each completed substantial discovery and had begun preparations for deposition, and each was prepared to pursue this matter through trial. Apart from the requested incentive, Overton and Yates will receive no settlement payments or benefits of any nature other than the benefits available to the Class generally.

The requested incentive awards of $5,000 each are reasonable in proportion to their efforts in this action. *See* Overton Aff., Dkt. No. 129-3; Yates Aff., Dkt. No. 129-4. Those awards amount to 0.28% of the total Settlement value, a reasonable amount in proportion to the Settlement as a whole. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 award to each of two representative plaintiffs in settlement of $1.725 million). To compensate the Class Representatives for the burdens of their active involvement in this action and their efforts on behalf of the Class, the Court approves incentive awards in the amount of $5,000 each for Overton and Yates, paid in accordance with the terms of the Amended Settlement Agreement.[3]

---

[3] The Amended Settlement Agreement provides for clear sailing for incentive awards of up to $2,500 per Class Representative. Class Counsel represents that Defendants later agreed not to object to $5,000 each. The Settlement Notices reflected the larger incentive, and the Court received no objection.

## XIV.   Class Member Objections

No Class Member filed an objection to the Settlement, an omission that can't be attributed to inadequate notice on the record before the Court. *See infra*, Section VI. The Court also received no objections concerning the Fee Motion, and, as discussed *supra*, considers the requested fees reasonable. As discussed throughout this Order, the Court finds the Settlement and the requests for fees, costs, and incentive awards reasonable.

## XV.   No Modification of Settlement Agreement without Court Approval

Plaintiffs' proposed order (but not their Motion or briefing) sought a provision permitting amendment of the Settlement without further order of the Court. Rule 23 doesn't permit settlement of class claims unless the Court is apprised of the settlement's terms and determines that they adequately protect the interests of absent class members. Fed. R. Civ. P. 23(e)(2); *see also SFBSC Management*, 944 F.3d at 1048. This process would be reduced to a charade if the Court were to permit the parties to vary the approved Settlement terms without Court supervision. This Order approves the Settlement as memorialized in the Amended Settlement Agreement only. No further amendments or modifications will be permitted without Court approval.

## XVI.   Enforcement of Settlement and Jurisdiction

Nothing in this Final Order shall preclude any action to enforce or interpret the terms of the Settlement.

The Parties filed a Joint Motion for Consent to Exercise Jurisdiction by a United States Magistrate Judge—that Motion is **GRANTED**.[4] Magistrate Judge Andrew G. Schopler, or another assigned Magistrate Judge sitting in this District in the event of Judge Schopler's unavailability, will retain jurisdiction over:

---

[4] The Court previously denied the Final Approval Motion's request that the undersigned District Judge retain jurisdiction over the Settlement. Dkt. 146.

Case 3:17-cv-00597-GPC-AGS   Document 151   Filed 12/15/20   PageID.2926   Page 24 of 24

1      1) The interpretation and implementation of the Amended Settlement
2         Agreement;
3      2) Any matters arising out of or related to the interpretation or
4         implementation of the Agreement;
5      3) Resolution of any settlement disputes and enforcement of the terms of
6         the Agreement; and
7      4) Any requests to amend the settlement agreement, as discussed *supra*,
8         Section XV.

**XVII. Dismissal of Action**

Plaintiffs' claims in this action are **DISMISSED WITH PREJUDICE**, without any award of attorneys' fees or costs except as provided in this Order.

The Court will address the pending third-party claims by separate order.

DATED: December 15, 2020

Hon. Larry A. Burns
Chief United States District Judge

24

3:17-cv-00597-GPC-AGS